**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TAYNA WOODALL,

                                        Plaintiff,

               - v -                                      Civ. No. 1:11-CV-449
                                                                (RFT)[1]

RICH ALBANY HOTEL, LLC,
NEW CASTLE HOTELS, LLC, *doing business*
*as Holiday Inn*,

                                        Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

**Hacker, Murphy Law Firm**                        JOHN F. HARWICK, ESQ.
*Attorney for Plaintiff*
7 Airport Park Boulevard
Latham, New York 12110

**Office of Theresa J. Puleo**                     MURRY S. BROWER, ESQ.
*Attorney for Defendants*
P.O. Box 12699
Albany, New York 12212

**KLG Luz & Greenberg LLP**                        THOMAS J. LUZ, ESQ.
*Attorney for Intervenor Skywest Airlines*
370 Lexington Avenue, 24th Floor
New York, New York 10017

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

On April 21, 2011, Woodall commenced a diversity tort action, pursuant to 28

_____

[1] With the parties' consent, the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, referred jurisdiction of this matter to this Court.  Dkt. No. 20.

U.S.C. § 1332(a), for injuries sustained due to a fall on the Defendants' property. Dkt. No. 1, Compl.  Currently pending before the Court is a Motion to Intervene filed by Woodall's employer, Skywest Airlines - ASA X Jet (hereinafter "Skywest"), through Sedgwick Claims Management Services, Inc., its third-party workers' compensation administrator (hereinafter "Sedgwick"). Dkt. No. 19, Mot. to Intervene, dated Jan. 19, 2012.[2]  Skywest wishes to intervene in order to enforce a statutory subrogation workers' compensation lien. *See* Dkt. No. 16, Notice of Lien, dated Dec. 19, 2011. Promptly thereafter, on January 23, 2012, Woodall filed a Cross Motion seeking an order finding that Skywest does not have a valid lien. Dkt. No. 21, Pl.'s Cross Mot.[3] The Defendants likewise filed a timely response to the Motion to Intervene. Dkt. No. 23, Defs' Resp. to Mot.[4]  Instead of opposing the Motion, the Defendants do not object to Skywest's intervention yet ask this Court to find Georgia's law applicable to the workers' compensation lien issue, and to further hold that a proposed settlement would not make Woodall "whole" as required by that statute, thereby rendering

---

[2] The Motion to Intervene is comprised of the following: Dkt. No. 19, Notice of Mot. to Intervene; Dkt. No. 19-1, Sarah Smith Aff., dated Jan. 18, 2012, with Exs. 1-5; Dkt. No. 19-3, Mem. of Law, dated Jan. 19, 2012.

[3] Woodall's Cross Motion is comprised of the following: Dkt. No. 21, Notice of Cross Mot.; Dkt. No. 21-1, John F. Harwick Esq., Aff., dated Jan. 23, 2012; Dkt. Nos. 21-2 to 21-7 & 21-9, Exs.; Dkt. No. 21-4, Notice of Lien; Dkt. No. 21-8, Tanya Woodall Aff., dated Dec. 22, 2011; and, Dkt. No. 22-10, Pl.'s Mem. of Law, dated Jan. 23, 2012.

[4] The Defendants' Response is comprised of Murry S. Brower, Esq., Affidavit, dated Feb. 9, 2012, and a Memorandum of Law, with five Exhibits.  Dkt. No. 23.

Skywest's lien unenforceable.  As to the Cross Motion, Skywest filed an Opposition.[5]

Dkt. No. 24.

## I. BACKGROUND

Apparently Woodall, who is a forty-four-year-old pilot, either sought lodging at or was visiting the Holiday Inn, located on Wolf Road, Albany, New York, which is owned and operated by the Defendants.  It is alleged that on December 28, 2009, at approximately 9:15 a.m., Woodall slipped and fell on ice and snow that had accumulated, causing her injuries and damages.  Woodall claims that her fall was precipitated by the negligence of the Defendants.  *See* Dkt. No. 1, Compl.  As a result of her fall, Woodall "suffered a fractured bone and torn cartilage in [her] right wrist . . . [which] kept [her] out of work for over a year and required surgery and postsurgical pain management injections."  Dkt. No. 21-8, Tayna Woodall Aff., dated Dec. 22, 2011, at ¶ 5.  Woodall is right handed and she has been advised that her "right wrist will never be the same," which conceivably may "interfere with [her] ability to earn a living as an airline pilot."  *Id*. at ¶¶ 5-6.  This mishap occurred while she was employed as a pilot for Skywest, and, accordingly she applied and received

---

[5]  A Memorandum of Law, dated February 8, 2012, and an Affidavit, dated February 27, 2012, from Thomas J. Luz, Esq., comprises Skyway's Opposition to the Cross Motion.  See Dkt. Nos. 24 & 25.

workers' compensation, which she presumes[6] were paid under Georgia's Workers'
Compensation Law. *Id.* at ¶¶ 3-4.  Records reveal that Woodall was paid through
workers' compensation $19,800.88 for medical benefits and $22,228.03 for wage
indemnity for a total subrogation lien of $42,028.91.  *See* Dkt. Nos. 21-4 (Notice of
Lien) & 21-5, Exs. (workers' comp. payment schedule); Dkt. No. 19-1, Sarah Smith
Aff., dated Jan. 18, 2012, at ¶ 6, & Ex. 4 (Payment Chart).   Although Woodall
received $22,228.03 for salary indemnity, she avers that her actual lost income was
over $60,000.  Woodall Aff. at ¶ 7, Dkt. No. 21-9, Wage Chart.

## II.  DISCUSSION

### A.  The Legal Standard for a Motion to Intervene

Because Skywest, through its third-party administrator, Sedgwick, provides its
employees with workers' compensation coverage and met this obligation to Woodall
after the accident by paying her medical bills and share of her salary, it now claims to
be subrogated to her rights to recover to the extent of those payments made from the
third-party tortfeasor.  Smith Aff., at ¶¶ 5-7.  In order to protect this subrogated right,
Skywest seeks to intervene in this pending action pursuant to Federal Rules of Civil
Procedure 24(a) and (b).  If a party files a

---

[6]  It appears that although Skywest is a Utah Corporation, it had a base of operation out of
Atlanta, Georgia.  Woodall Aff. at ¶ 3; Dkt. No. 19-1, Sarah Smith Aff., dated Jan. 18, 2012, at ¶ 4,
Ex. 4, (a benefit payout list noting that Skywest is located in Atlanta, Georgia.).

> timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a).

As the statute indicates, a putative intervenor as of right must meet four criteria: the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). A failure to meet all of these requirements justifies the denial of its motion. *United States v. Pitney Bowes Inc.,* 25 F.3d 66, 70 (2d Cir. 1994).

Skywest contends that it is entitled to intervene as a matter of right under subsection 2 because it has an interest relating to the transaction which is the subject matter of the action, which could be impeded if not permitted to intervene. Skywest claims that it has a substantial interest in this action because it paid benefits to Woodall as a result of her injuries due to the fall and, "under the substantive law of both New York and Georgia, is subrogated to Woodall's right to recovery against the Defendant[s]." Dkt. No. 19-3, Intervenor Mem. of Law at p. 1. Where, as here, an

insurer has partially compensated an insured for a loss, both the insurer and insured have a substantial right against the tortfeasor which qualifies them as real parties in interest. *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 381 (1949); *Brocklesby Transp., A Div. of Kingsway Transp., Ltd v. E. States Escort Servs.*, 904 F.2d 131 (2d Cir. 1990) (for the proposition that if the insured is only partially compensated by the insurer, both the insurer and the insured are real parties-in-interest); *Akwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 209 (2d Cir. 1985). But, before the Court can determine if Skywest has a protectible interest in this litigation, it must first determine which substantive law governs in this matter on the issue of preserving a lien. As mentioned above, Skywest argues that New York and/or Georgia Law permits such intervention.

## B. Choice of Laws

### 1. The Legal Standard

The Court begins this discussion as to which substantive law applies with the understanding that for federal actions based upon diversity jurisdiction, which do not implicate any federal policy, a federal court must apply the choice of law of the state where it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *see also Ferens v. John Deere Co.*, 494 U.S. 516 (1990) (federal court applying Mississippi state courts' choice of law rules). Recently, the Second Circuit confirmed

this proposition that federal courts are obligated to apply the choice of law rules of the forum state, and, for this Court it is New York law. *In re Courdert Bros. LLP*, _F.3d_, 2012 WL 615281 (2d Cir. Feb. 28, 2012); *see also In re Gaston & Snow*, 243 F.3d 599, 601-02 (2d Cir. 2001).  Therefore, federal courts' proper function is "to ascertain what the state law is, not what it ought to be."  *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. at 497.  Yet, it is a seminal principle of conflict of laws that unless the laws of competing jurisdictions are actually in conflict, that is, there is a substantive difference between them, a state can dispense with a choice of law analysis and freely apply its own.  *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 151 (2d Cir. 2008) (noting that the first step is to determine if there is an actual conflict of law, which would require a choice between two state courts' substantive law); *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

New York's choice of law has been evolutionary over the years.  In 1963, the New York Court of Appeals abandoned the long standing *situs* principle - "where the accident occurred" rule - for a "center of gravity" or "grouping of contract" doctrine. *Babcock v. Jackson*, 12 N.Y.2d 473 (1963).  But over time, in order to assure "greater predictability and uniformity," New York shifted, at least in the context of tort law, from the "grouping of contacts" analysis - a virtual quantitative counting of which state had the greater number of contacts with a particular matter - for a more refined

principle of "interest analysis." *Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 320 (2011).[7]  The interest analysis test became the more "relevant analytical approach to choice of law in tort actions in New York[:]" "[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict[.]" *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 197 (1985) (alterations and quotation marks in the original, citation omitted).  A court should endeavor to apply the law of the jurisdiction having the most significant and predominate relationship to the particular transactions and the parties, but it also must concern itself with the legal policy aspects at stake. *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994) (cited by *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d at 143).  "[T]his process requires [courts] first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has

---

[7]  As a point of reference, *Edwards v. Erie Coach Lines, Inc.,* illustrates the continuing evolutionary nature of New York's choice of laws. 17 N.Y.2d 306 (2011).  The New York Court of Appeals now instructs us that the "correct way to conduct a choice-of-law analysis is to consider each plaintiff vis-á-vis each defendant, [that is,] a plaintiff-by-defendant inquiry."  17 N.Y.2d at 329 (2011).  As a result of applying this plaintiff-by-defendant analysis, along with the *Neumeier* three rule framework also noted in *Edwards*, where the parties, particularly the defendants, resided in different domiciles, different state allocation of loss laws become applicable simultaneously: for example, in *Edwards*, Ontario law applied to the bus defendants, while New York law applied to the Pennsylvania tractor-trailer defendants.

a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied." *Miller v. Miller*, 22 N.Y.2d 12, 16 (1968).

So, for example, in tort actions, if the conflict rules involve the appropriate standard of conduct, there is a set of predominant factors to consider while, conversely, if the rules in conflict concern allocation of losses, there is yet another set of predominant factors to weigh. Depending on which standard is relevant in a particular case or what interest is being protected within a case, different results may occur. *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d at 198 (discussing the implication of the *Babcock* rule vis-á-vis the three rule framework pronounced in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972)[8] as to the determinative role of the parties' split

---

[8] In *Neumeier v. Kuehner*, the New York Court of Appeals was addressing conflicting guest passenger statutes, which involved the allocation of losses after a tort occurred rather than regulating primary conduct. In *Neumeier*, the plaintiff was an Ontario resident, the defendant a New York State resident, and, the accident occurred in Ontario. The New York statute favored the non resident plaintiff while the Ontario statute was favorable to the defendant driver, the New York resident. The New York Court of Appeals found that although New York has a deep interest in protecting its own residents against unfair or anachronistic statutes of another state, it has no legitimate interest in ignoring the public policy of another jurisdiction. 31 N.Y.2d at 125-26. Referring to *Tooker v. Lopez*, 24 N.Y.2d 569 (1969), the *Neumeier* Court noted, at least in regard to guest statutes, the evolution of its choice of law rules gravitated towards "the formulation of a few rules of general applicability promising a fair level of predictability." *Id*. at 128. In doing so, the *Neumeier* Court identified a three principled framework in handling such factors as the parties' different domiciles, situs of the accident, and the application of the appropriate law. *Id*. Weighing the facts before that court, it was the third stated principle that controlled: "The law to be applied is that of the jurisdiction where the accident happened unless it appears that displacing the normally applicable rule will advance the relevant substantive law purposes of the jurisdictions involved." *Id*. at 128-29 (quotation marks and alterations omitted). In the final analysis, the court displaced its normal situs rule in order to advance the substantive law of the Ontario's guest statute under those facts. *Schultz v. Boy Scout of Am.*, adopted the *Neumeier* three principle rule framework into other legal contexts

(continued...)

domiciles and the substantive law or policy being advanced as the predominant guiding forces in determining which state law should apply).  However, "it is well settled that New York has long recognized the use of 'center of gravity' or 'grouping of contacts' as the appropriate analytical approach to choice of law questions in contract cases . . . [which would] establish which State has the most **significant relationship** to the transaction and the parties[.]"  *In the Matter of the Liquidation of Midland Ins. Co.,* 16 N.Y.3d 536, 543-44 (2d Cir. 2011) (citing, *inter alia*, *Zurich Ins. Co. v. Shearson Lehman Hutton*, 84 N.Y.2d at 317) (alterations omitted) (emphasis added); *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d at 151 (noting that New York applies a group of contacts theory to contract claims, looking to a spectrum of significant contacts as to which state has the most significant relationship to the transaction and the parties).

## 2.  Analysis

Each party in this discussion takes richly divergent perspectives whether a choice of law analysis is required.  Skywest submits that either New York or Georgia Workers' Compensation Law is applicable as to whether it can intervene in this matter and to what degree it may recover on its lien, though more strenuously arguing that New York Workers' Compensation Law is more appropriate.  Woodall does not

---

[8](...continued)
beyond guest passenger statutes.  65 N.Y.2d 189.

address this issue specifically head on but argues that only Georgia Law is the applicable law regarding the enforcement of Skywest's lien. And, the Defendants take another view that it is unnecessary to engage in a choice of law discussion,[9] and Skywest has the right to intervene in order to preserve its lien, yet the enforcement of that lien in this case is controlled by Georgia law, and not New York.

First, the Court must identify if there is an actual conflict between New York's and Georgia's Workers Compensation Law before a choice of law analysis can commence. *Int'l Bus. Mach. Corp. v Liberty Mut. Ins. Co.*, 363 F.3d at 143 (citing *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993)). In New York, an insurer who has paid disability benefits "shall have a lien on the proceeds of any recovery from such third party, whether by judgment, settlement or otherwise, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred in effecting such recovery, <u>to the extent of the total amount of disability benefits provided by this article and paid,</u> and to such extent such recovery shall be deemed for the benefit of such carrier or the chairman." N.Y. Workers' Comp. Law. § 227(1) (emphasis added). Whereas, Georgia's law states that "[i]n the event an employee has a right of action against such other person as contemplated in subsection (a) of this Code section

---

[9] The Defendants' perspective is that New York Workers' Compensation Law does not allow an employer/insurer to intervene, thus no choice of law issue exists.

and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery. The employer or insurer may intervene in any action to protect and enforce such lien. However, the employer's or insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and <u>shall only be recoverable if the injured employee has been fully and completely compensated</u>, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury. GA. CODE ANN. § 34-9-11.1(b) (emphasis added).  Comparing the two states' relevant statutes, it is readily discernible that there is a conflict between the two; New York's law places no restriction as to when or how an insurer can recapture the benefit paid, whereas, under Georgia law, an insurer can only recover the benefits paid if the injured employee has been fully and completely compensated.  Ostensibly, New York's law is more pro-insurer while Georgia's law favors the injured insured.

Now that an actual conflict has been identified, the Court turns to New York's choice of law as it may pertain to workers' compensation liens issues.  In *Carminucci v. Pepsico, Inc*., the plaintiff was injured in New York but received workers'

compensation through Connecticut. 236 A.D.2d 499 (N.Y. App. Div. 2d Dep't 1997). The appellate court found that "[t]he rights of an employer to be reimbursed for workers' compensation benefits paid to an employee are governed by the law of the State in which the benefits were paid." *Id.* The appellate court then determined that, since the plaintiff was paid benefits under Connecticut's Workers' Compensation Law, Connecticut law applied. *Id.* at 501 (citations omitted); *see also Meras v. Slee*, 271 A.D.2d 417 (N.Y. App. Div. 2$^d$ Dep't 2000) (allowing a Connecticut employer to intervene in order to preserve its rights to a lien under Connecticut law); *McDuffie v. Wilner*, 415 F. Supp. 2d 412, 420 (S.D.N.Y. 2006). Notwithstanding this strong and clear pronouncement of New York's choice of law regarding workers' compensation liens, Skywest challenges its validity, arguing that "this line has been criticized for failing to apply the interest analysis required by the Court of Appeals in *Bacock [v. Jackson*, 12 N.Y.2d 473]." Dkt. No. 19-3, Intervenor's Mem. of Law at p. 12. Skywest asserts that contrary to this stated proposition of law, it is the place of the acceptance of benefits, not where benefits are paid, that is a determinative factor to be considered. *Id.* (citing *Schultz v. Boy Scouts Am.*, 65 N.Y.2d 189). Skywest further posits that this matter is a loss-allocation matter and should be decided under *Neumeier*'s second rule in that where the parties are domiciled in different states and the local law favors the respective domiciliary, the court should apply the law of the

place of injury, which, in this case, happens to be New York's. *Id.* (citing *Neumeier v. Kuhner*, 31 N.Y.2d 121). Lastly, Skywest cites a trilogy of cases for the proposition that when an injured party receives workers' compensation from a State other than New York, under the balancing of interest analysis, "[c]ourt[s] [have] determined that New York Worker Compensation Law should apply." *Id.* at p. 12-13 (citing *Fiske v. Church of St. Mary of the Angels*, 802 F. Supp. 872 (W.D.N.Y. 1992), *Mihalic ex rel. Estate of Johnson v. K-Mart of Amsterdam*, 363 F. Supp. 2d 394, 399 (N.D.N.Y. 2005), & *Glunt v. ABC Paving Co.*, 247 A.D.2d 871 (N.Y. App. Div. 4th Dep't 1998). This Court does not share Skywest's contestation.

To argue that the *Carminucci* Court, after having the rich benefit of the *Babcock*, *Neumeier*, and *Schultz* precedents, actually ignored them and did not apply the appropriate choice of law analysis created by them, may be myopic. As we all should know, in New York, appellate courts are required, much like lawyers, trial judges, and the public, to follow the law as announced by the New York Court of Appeals, the highest Court in the State. Even though the *Carminucci*'s decision may be devoid of a multi-paged analysis and it may have delivered a crisp pronouncement of the relevant law, such a decisive decision should not necessarily suggest that the court did not perform an interest analysis, determining the jurisdiction with the greatest interest which relates to the purpose of the particular law in conflict, that is

here workers' compensation lien statutes, or a grouping of contacts analysis to establish which State law had the most significant relationship to the transaction (here the enforcement of a lien) and the parties.   What should not be forgotten about *Neumeier* is that it formulated a few rules of general applicability which would promise a fair level of predictability and uniformity. 31 N.Y.2d at 128. *Carminucci* likewise, in the scheme of things, presents a predictable and uniform rule as to which jurisdiction would have the most predominant and relative interests in having its law govern the preservation and prosecution of a workers' compensation lien.  This Court recognizes that the New York Court of Appeals has not spoken on the choice of law rules relevant to workers' compensation lien provisions, but, when one of the State's four appellate courts has rendered such a ruling, which has not been contradicted or distinguished by another New York appellate court, it is generally deemed to be a controlling precedent in New York.[10]

Next, Skywest submits that this is a loss-allocation case, which can easily be decided by *Neumeier's* second rule, that is, where the parties are domiciled in different

---

[10]  This Court could not find any precedents that criticized directly *Carmunucci* or *Meras v. Slee*, or the principle of law declared by them.  Nor did Skywest provide any such criticizing precedents.  However, Skywest cited the *Matter of O'Connor's Estate*, 21 A.D.2d 333 (N.Y. App. Div. 2d Dep't 1964) for the proposition that the governing law on workers' compensation is where the benefits are accepted.  Dkt. No. 19-3, Intervenor's Mem. of Law at p. 12.  However, that principle of law stated in *Matter of O'Connor's Estate* has been met with significant disagreement. *See Roach v. McGuire & Bennett, Inc*., 146 A.D.2d 89, 93 (N.Y. App. Div. 3d Dep't 1989) & *Fiske v. Church of St. Mary of the Angels*, 802 F. Supp. 872, 880 (W.D.N.Y. 1992).

*-15-*

states, and the law of the place where the accident occurred favors its domiciliary, the law where the place of injury occurred controls.  *Neumeier v. Kuhner*, 31 N.Y.2d at 128.  Accordingly, Skywest posits that in our case, it is New York.

Our facts and the choice of law as to the application of a lien's recovery do not fit neatly within the second rule.  First, this Court is not prepared to limit the precept of preserving and enforcing workers' compensation liens as purely within the loss allocation category like other provisions of workers' compensation laws, *i.e.*, third-party contribution provisions.  Lien laws have hybrid aspects of both loss allocation and contract elements - the parties entered into a contractual relationship whereby an employee provides his labor and, by statutory mandates, an employer provides, as part of the consideration for such labor, workers' compensation insurance or coverage for the benefit of that employee.  True, the parties, as well as the prospective intervenor, have separate domiciles: Woodall resides in New Hampshire; Defendant Rich Albany Hotel exists under Delaware law but has a place of business in Albany, New York; Defendant New Castle exists under Connecticut law with a principal place of business in that State; and Skywest is a Utah corporation with a principal place of business in Atlanta, Georgia.  Although the first component of *Neumeier's* second rule may have been satisfied, the second component, that the law of the place where the accident occurred favors the domiciliary, has not been met.  New York Workers'

Compensation Law section 227(1) does not favor Defendant New Castle, and whatever lien law may be applicable is essentially immaterial to New Castle as a third-party tortfeasor.  And, there is nothing within our record to indicate that Woodall, a New Hampshire resident, would have been entitled to or did collect workers' compensation benefits in New York.  Although this Court is not prepared to concede that any of the *Neumeier* rules are applicable over the appropriate analysis as to which state's lien law is applicable, if any would, it would seem to be the third rule.  31 N.Y.2d at 128.  "In other situations, when [the parties] are domiciled in different states, the rule is necessarily less categorical."  *Id.*  Hence, the third rule espouses that the law of the state where the accident occurred would govern unless "it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants."  *Id*.

Additionally, the trilogy of cases cited by Skywest to sustain its position that where there is a conflict of provisions of different state's workers' compensation law the place of the injury governs, may not fairly square with our issue either.  In each of those cases, the courts were not dealing with the employer or insurer's right to enforce its lien but rather they were dealing with third-party actions seeking contribution from the employer, who may have paid benefits to the injured worker for

*-17-*

any damages occurring as a result of a tort.  As in each of those cases, the relevant workers' compensation law provision dealt with contribution or indemnity against the employer and had little, if anything, to do with the employer's ability to recover from a verdict or settlement those benefits paid to its employee.

As an illustration, the Court turns to *Fiske v. Church of St. Mary of the Angels*, 802 F. Supp. 872.  This is a case where a subcontractor's employee, who was injured in New York, sued the general contractor and building owner, New York defendants, under New York Labor Law § 240.  The building owner and the general contractor filed a third party action against the subcontractor, a Pennsylvania business concern who had paid benefits to the employee through Pennsylvania's workers' compensation.  Under Pennsylvania workers' compensation law, plaintiff's exclusive remedy against his employer is the workers' compensation benefits, which conceivably would relieve the employer from liability, so not surprisingly, the employer argued that Pennsylvania rather than New York law should apply in this tort action.  New York law permits third-party contribution while Pennsylvania law does not.  Applying the legal analysis framework, the fact that the plaintiff received workers' compensation from the employer in Pennsylvania was "not of overriding significance" as to which jurisdiction's law should apply.  802 F. Supp. at 882. Rather, the predominate factors had more to do with the fact that New York has a

strong public policy for regulating safety at construction sites, that the general contractor and owner of the building were New York corporations, that the overall business relationship among the parties centered in New York, that the accident occurred in New York, and that a third-party action was not against Pennsylvania policy of protecting employers from actions instituted by employees. *Id.*; *see also Glunt v. ABC Paving Co.*, 247 A.D.2d 871 (third party action for contribution); *Mihalic ex rel. Estate of Johnson v. K-mart of Amsterdam*, 363 F. Supp. 2d 394 (discussing workers' compensation law provisions that dealt with initiating third party contribution actions).

Taking full measure of the comprehensive legal permutations of workers' compensation statutes, it does not necessary follow that one size fits all aspects of the many and varied provisions of workers' compensation laws when it comes to deciding the appropriate choice of law. In some respects, a *Neumeier* analysis may be required, while in others, a more basic rule may be applicable. Apparently, the allocation of loss aspect of a statutory provision dealing with third party action, contribution or indemnity deserves a *Neumeier* analysis; however, that does not necessarily mandate a similar treatment for a provision that allows employers and insurers to protect their liens. As to the latter, it would seem that the state that has actually paid the workers' compensation benefit would most often have the most interest in having its law apply.

Nevertheless, in the scheme of things, a *Neumeier/Schultz* analysis would arrive at the same conclusion as *Carmunucci*.  As the record indicates, Woodall was employed by Skywest, which has a base of operation in Georgia, and was paid workers' compensation under Georgia's law.  Woodall's Aff., at ¶¶ 3 & 4; *see also* Dkt. Nos. 19-1, Ex. 4 & 23, Exs. (workers' compensation transactional records confirming Skywest's base of operation in Atlanta Georgia).  Skywest's and Woodall's overall contractual relationship is centered in Georgia.  As a part of that contractual employment relationship, their respective involvement in providing and receiving disability benefits through Georgia highlights where their obligations to each other were to be fulfilled.  Certainly, Georgia's legislature has expressed an interest that its workers' compensation provisions be applicable in circumstances such as this and that its employers and/or insurers are reimbursed for the payments that they have made.  Moreover, Georgia would have a significant interest in regulating the interaction between its employers and employees in matters such as this.  Absent from our record is any indication that any workers' compensation benefits were paid in accordance with New York law.  Since Woodall was covered by Georgia's workers' compensation law and accordingly received benefit thereunder, New York's interest is minimal, and the New York domiciliary is not being deprived of a recovery or a benefit that could be derived from New York's workers' compensation laws.  It

appears that Georgia's interest here substantially outweighs New York's interest. Accordingly, as to the workers' compensation lien, Georgia law is controlling.

### 3. Georgia Law

Skywest has filed a notice of lien in the amount of $42,028.91, of which $22,228.03 was for indemnity benefits and $19,800.88 for medical benefits. With the commencement of this diversity action, consequently Skywest contends that it is entitled to intervene as a matter of right. GA. CODE ANN. § 34-9-11.1(b); *see supra* Part II.B.2. The Georgia statute actually creates two rights on behalf of the employer or insurer: (1) Although an employer/insurer is entitled to a subrogation lien for the disability benefits it has paid to an injured employer, in order to enforce the lien it must intervene in the employee's suit. Thus, an employer has the right to intervene to assert its lien; and (2) the employer has a right to recover on the lien where there is a demonstration that the employee has been fully and completely compensated. As to the former point, an employer/insurer must intervene in a employee's tort claim to protect and enforce its subrogation lien. *Anthem Cas. Ins. Co. v. Murray*, 246 Ga. App. 778, 780 (2001) ("It is the responsibility of the workers' compensation provider to protect its interest by intervention[.]").[11] And, as to the latter, the right to recover

---

[11] If an employee action has been commenced, an employer/insurer has no right to pursue a separate and independent action against the third-party tortfeasor. *Anthem Cas. Inc. Co. v. Murray*, 246 Ga.App. 778, 782 (2001).

is limited to the benefits paid and, furthermore, an employer/insurer cannot pursue subrogation claims for benefits paid under a foreign law.  *Performance Food Group Inc., v. Williams*, 300 Ga.App. 831 (2009).  "The right to enforce the lien is only ripe once there is a showing that the plaintiff has been fully and completely compensated."  *Watkins v Vestil Mfg. Corp*., 2008 WL 5102885, at *5 (N.D.Ga. Dec. 1, 2008).  An employee is fully and completely compensated when the amount of the judgment or settlement received by the injured party/employee exceeds the injured party's economic and noneconomic damages.  *Thurman v. State Farm Mut. Auto. Ins. Co*., 278 Ga. 162, 164 (2004).  Economic damages would constitute medical expenses and lost wages, while noneconomic damages represent pain and suffering.  *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga.App. 866, 873 (2002) (identifying noneconomic damages as pain and suffering).  The burden rests with the employer/insurer to prove that the insured employee has been fully compensated as to each category of noneconomic loss and "that no portion of the lien is taken against any recovery for noneconomic losses."  *Anthem Cas. Ins. Co. v. Murray*, 246 Ga.App. at 780.  To reiterate, the employer/insurer's right is always subordinate to the employee/insured's paramount right to complete compensation.  *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. at 872.

It is incumbent upon the trial court, and not a jury, to determine if the employee

has been fully and completely compensated; "neither party has a right to a jury determination of whether the injured employee has been fully and completely compensated[.]" *Id*. at 870 & 872-73. That determination compares the sum of the workers' compensation benefits paid by the employer/insurer and the amount of the employee's recovery in the third-party lawsuit to **all** economic and noncomic losses caused by the injury. *Georgia Elec. Membership Corp v. Garnto*, 266 Ga.App. 452, 453 (2004); *see also Austell Healthcare, Inc. v. Scott*, 308 Ga.App. 393 (2011) (noting that it is the trial court's duty to weigh the evidence and make a factual determination as to whether the employer has carried its burden). However, the Georgia statute does not permit the matter of comparative or contributory negligence to be considered. *Homebuilders Ass'n of Georgia v. Morris*, 238 Ga.App. 194, 196 (1999). Although it is not required, if there is a jury trial, a trial court is permitted to use a special verdict form to assist it in determining what facet of the verdict constitutes economic and noneconomic recoveries. *Watkins v. Vestil Mfg. Corp.*, 2008 WL 5102885, at *3 n.2.

Both Woodall and Defendants inform the Court that prior to the filing of the notice of lien they engaged in settlement negotiation and may have arrived at a proposed amount for only pain and suffering. Dkt. No. 23, Defs.' Mem. of Law at p. 1. Yet, it is slightly unclear if Woodall has accepted the proposed amount. Even if settlement had been consummated, the subrogation lien would still attach, the claim

of the intervenor remain adjudicatory, and a fact finding would have to ensue to determine whether Woodall had been fully and completely compensated by the settlement. *Int'l Maint. Corp. v. Inland Paper Board & Packaging, Inc.*, 256 Ga.App. 752, 755 (2002) (citations omitted).

Thus Georgia law makes clear "[f]ailure to allow intervention to protect the subrogation lien [even at the settlement stage] . . . constitutes an abuse of discretion by the trial court[,]" *Canal Ins. Co. v. Liberty Mut. Ins*., 256 Ga.App. at 868, and, "an intervenor may file any pleadings in the case that the original parties could have filed." *Andrews v. Ford Motor Co.*, 310 Ga.App. 449, 454 (2011) (citing, *inter alia*, *Int'l Maintenance Corp v. Inland Paper*, 256 Ga.App. at 754) ("an intervenor [may] file whatever briefs, evidence, or other papers it chooses[.]").

### 4. Motion to Intervene

The Court returns to Skywest's Motion to Intervene pursuant to Rule 24(a)(2). As identified above, there are essentially four elements Skywest must meet in order to properly intervene.

The Movant must demonstrate an interest relating to the property or transaction that is the subject of the pending action. Weighing the above discussion, it is evident that the Georgia statute provides Skywest with a right to assert a subrogation lien for the workers' compensation benefits it has paid to Woodall, albeit a lien infused with

a condition precedent.  *Canal Ins. Co. v. Liberty Mut. Ins. Co*, 256 Ga.App. at 871 (shall only be recoverable "if the injured employee has been fully and completely compensated").  This statutory right creates an interest on the part of Skywest in the pending litigation between the current parties.  Furthermore, case precedent establishes that Skywest's right to intervene is fundamentally absolute, whether through a full plenary proceeding or a subsequent fact finding relative to any settlement.

Next, the Movant must show that it is so situated that without intervention the disposition may impair its interest and that the interest is not already adequately represented by existing parties.  From this record, neither Woodall nor the Defendants have an obligation or the inclination to ensure that the subrogation lien is paid. Woodall's and the Defendants' opposition to the lien itself is more telling on whether Skywest's interest is impaired or imperiled without its intervention.  At least for Woodall there is a fear and an enmity that Skywest's intervention may jeopardize the proposed settlement and obviously has infinitesimal interest in pursuing a recover on Skywest's behalf.  There is a palpable adversity of interest to Skywest's effort to intervene and even to the assertion of the lien at this juncture of the litigation.  For these reasons, Skywest has rebutted the presumption of adequate representation, *Butler, Fitzgerald & Potter v. Sequa Corp*., 250 F.3d 171, 180 (2d Cir. 2001), and has

persuaded this Court that without Skywest's intervention, the lien would be compromised.

Finally, the Movant would have to demonstrate that this Motion was filed timely. Ostensibly, timeliness "defies precise definition," and should be judged on a case by case basis, *United States v. Pitney Bowes Inc.*, 25 F.3d 66, 70 (2d Cir. 1994), hence a careful review of a case's chronology may be helpful. Since the filing of the Complaint, this lawsuit has been on an aggressive track: a complaint was filed on April 21, 2011; issues were joined on May 10, 2011; and, a Scheduling Order was issued on September 7, 2011.[12] It is uncertain from the record when Skywest and its third party administrator Sedgwick learned of this lawsuit, but correspondence, dated August 26, 2011, alerted Woodall of its lien: "Please be advised our lien is FINAL and will need to be included in any settlement action." Dkt. No. 23, Ex., Sedgwick Lt.[13] On December 19, 2011, Skywest filed its notice of lien, Dkt. No. 16, and on January 19, 2012, filed this Motion to Intervene, Dkt. No. 19. Although four months may have past from notification of the lawsuit to the filing or the lien and an

---

[12] Pursuant to the Scheduling Order, the discovery deadline is April 30, 2012. Dkt. No. 11, Scheduling Order, dated Sept. 7, 2011.

[13] Sarah Smith, a subrogation specialist with Sedgwick, states that it did not learn of the existence of this action until mid-September 2011. Dkt. No. 19-1, Sarah Smith Aff., dated Jan 18, 2012, at ¶10. The time discrepancy between the August 26th Correspondence and Smith's recollection is too marginal to make a difference in our discussion.

additional month for the filing of the Motion, it appears that this Motion is timely, especially when considering that the Georgia Statute extends to employers/insurer the right to intervene even after settlement and a judgment. *Int'l Maint. Corp.v. Inland Paper*, 256 Ga.App. at 755. Skywest represents that it does not seek discovery nor an extension of the discovery deadline. Dkt. No. 19-3, Movant Mem. of Law at p. 10. There is no indication that any trial or settlement will be impeded because of this intervention.[14] Bearing all of this in mind, there is no apparent prejudice to either Woodall or the Defendants.[15]

## III. CONCLUSION

Skywest has established that it is entitled to intervene in order to preserve and protect its lien. The applicable law to be considered relative to the subrogated lien at the end of the litigation or settlement is Georgia law. The current status of this case, which the Court must determine, will direct our course of action. Both Woodall and

---

[14] This Court realizes that a motion to intervene could be denied if granting it would jeopardize a settlement and prejudice the parties. *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198-99 (2d Cir. 2000) (citing *United States v. Pitney Bowes Inc.*, 25 F.3d at 72). But, this Court has yet to confirm that indeed Woodall and the Defendants actually settled this matter. Accordingly, it is prudent for us to proceed to the next step in this litigation and determine its current status.

[15] Skywest also sought permission to Intervene pursuant to Rule 24(b). FED. R. CIV. P. 24(b). In order to obtain permission, a movant would have to demonstrate by a timely motion a conditional right to intervene, a claim that shares with the main action a common question of law or fact, and that the intervention would not delay or prejudice. Because the Court has concluded that Skywest may intervene as a matter of right, it is not necessary to consider this application under this provision.

Defendants indicate that there is a settlement at play.  However, the Case Docket indicates that mediation had failed.  Dkt. No 15, Report of Evaluator David Taffany, dated Dec. 7, 2011.[16]  But, the record further suggests that the Defendants have made a proposed settlement for noneconomic losses, and it seems that "Plaintiff is interested in accepting the lump sum settlement, but only if there exist no Workers' Compensation lien."  Dkt. No. 21-1, John F. Harwick, Esq., Aff., dated Jan 23, 2012, at ¶ 9; *see* Dkt. No. 23, Defs.' Mem. of Law.  Because of these developments, the Defendants urge this Court to immediately set up a proceeding to make factual determinations as to whether the settlement makes Woodall whole and fully complete.  Dkt. No. 23, Murry S. Brower Aff. at Wherefore Clause.  Whether this matter proceeds to trial or is settled as suggested, should there be an occasional conflict between the Intervenor and Plaintiff, this Court has the responsibility to "referee such disagreements and conflicts."  *Broad v. Hitts*, 2009 WL 5031372, at *2 (M.D.Ga Dec. 14, 2009) (quoting *Int'l Maint. Corp. v. Inland Paper*, 256 Ga.App. at 754-55..  Accordingly, it is hereby

**ORDERED**, that Skywest's Motion to Intervene, Dkt. No. 19, is **granted**.  Skywest shall file its Complaint within seven days of the filing date of this Order.  The

---

[16]  It appears that as of December 13, 2011, an offer of settlement had been made yet the action had not settled. Dkt. No. 21-7, Sedgwick Lt.

Defendants' answer to the Complaint shall be filed twenty days after being served with the Intervenor's Complaint; and it is further

**ORDERED**, that Woodall's Cross Motion to invalid Skywest's Lien, Dkt. No. 21, is **denied**; and it is further

**ORDERED**, that the Court shall hold a status conference within the following two weeks.  The parties, including the Intervenor, shall file the dates and times that they may be available for a telephone conference on the record so that the Court can gauge the progression and the current status of this case.

**IT IS SO ORDERED**.

April 11, 2012
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge