# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

TAYNA WOODALL, Plaintiff,
and SKYWEST ALIRLINES - ASA XJET,
*by its Third-Party Adminstrator, Sedgwick*
*Claims Management Services, Inc.,*
Intervenor-Plaintiff

        - v -

RICH ALBANY HOTEL, LLC;
NEW CASTLE HOTELS, LLC, *doing business*
*as Holiday Inn*,

                Defendants.

Civ. No. 1:11-CV-449
(RFT)[1]

**APPEARANCES:**                              **OF COUNSEL:**

**Hacker, Murphy Law Firm**                  JOHN F. HARWICK, ESQ.
*Attorney for Plaintiff*
7 Airport Park Boulevard
Latham, New York 12110

**Office of Theresa J. Puleo**               MURRY S. BROWER, ESQ.
*Attorney for Defendants*
P.O. Box 12699
Albany, New York 12212

**Karaahmet Luz & Greenberg LLP**           THOMAS J. LUZ, ESQ.
*Attorney for Intervenor Skywest Airlines*
370 Lexington Avenue, 24th Floor
New York, New York 10017

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

---

[1] With the parties' consent, the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, referred jurisdiction of this matter to this Court.  Dkt. No. 20.

## **MEMORANDUM-DECISION and ORDER**

On April 11, 2012, the Court issued a Memorandum-Decision and Order granting Skywest Airlines - ASA XJET (hereinafter "Skywest") the right to intervene in this action and to file a Complaint.  Dkt. Nos. 26, Mem.-Decision and Order & 30, Intervenor's Compl.; *see Woodall v. Rich Albany Hotel, LLC*, 2012 WL 1204018, at *10 (N.D.N.Y. Apr. 11, 2012).  In conjunction with granting Skywest permission to intervene in order to protect its subrogated workers' compensation lien, the Court also concluded that the applicable choice of law would be Georgia.  *Woodall*, 2012 WL 1204018, at *3-10.  Now that Skywest is a party, the Court was unsure of the status of this case in light of the revelation that Defendants had proposed a settlement for noneconomic losses and it appears that Woodall "is interested in accepting the lump sum settlement[.]"  *Id*. at *10 (quotation marks and citation to the record omitted). Because of our bewilderment, the Court ruled that a status conference was required. *Id*.

On April 25, 2012, a telephonic Conference was held on the record.  During the Conference, both Woodall and Defendants expressed their desires to settle this matter and argued that upon a fully consummated settlement, a fact determination as to whether Woodall was fully and completely compensated by the settlement would have to ensue.  Skywest took a completely different view of the case's status and contended

that in order to protect its subrogation lien, pursuant to Georgia Law, it had the right to prevent the proposed settlement and force, if necessary, this matter to a trial. Because of the parties' divergent perspectives of Georgia Law and the status of this case, and in order to frame the issue, the Court directed the parties to brief "whether an intervening employer, who has a workers compensation [lien] pursuant to Georgia law, has the legal authority to impede or prevent an injured plaintiff employee from accepting a settlement, which the intervenor may deem inadequate to satisfy the lien, and thus compel a trial on both liability and damages against the wishes of both the individual Plaintiff and Defendants." Dkt. No. 31, Text Order, dated Apr. 25, 2012. The parties' briefs have been filed with the Court. Dkt. Nos. 32, Skywest Lt.-Br., dated Apr. 26, 2012, 34, Pl.'s Lt.-Br., dated May 1, 2012, & 35, Defs.'Lt.-Br., dated May 2, 2012.

Skywest emphatically asserts that "[u]nder Georgia law, the purpose of intervention is to prevent a settlement or judgment jeopardizing the intervenor's interest," citing to two particular case precedents in support of that proposition. Dkt. No. 32 at p. 1 (citing, *inter alia*, *Dep't of Admin. Servs. v. Brown*, 219 Ga.App. 27 (1993) & *Ga. Elec. Membership Corp. v. Hi-Ranger, Inc.*, 275 Ga. 197 (2002)). Assertion notwithstanding, Skywest admits that there may be some interpretative tension between *Hi-Ranger* and another Georgia appellate ruling, *Int'l Maint. Corp.*

*v. Inland Paper Bd. & Packaging*, *Inc*., 256 Ga.App. 752 (2002), and yet argues that the "procedural posture in this case is indistinguishable from *Hi-Ranger* . . . [and] more in the spirit of *Hi-Ranger* than *Inland Paper*, because it appears that any proposed settlement may be calculated to avoid Skywest's lien, amounting to Plaintiff's tacit waiver of the right to require a showing of full compensation." Dkt. No. 32 at p. 2.  However, both Woodall and Defendants vigorously challenge Skywest's position by indicating that *Inland Paper* and its progeny are the more controlling precedents for this matter.  On balance, the Court concurs with Woodall's and Defendants' analysis of the applicable Georgia law.

In attempt to persuade the Court of its rightful position that it has the authority, as intervenor, to impede or halt a settlement that does not meet with its approval, Skywest may have read, as well as quoted, both *Dep't of Admin. Servs. v. Brown* and *Hi-Ranger* out of context.  Moreover, Skywest imprudently relies too heavily upon these two precedents, again, out of context with the panoptic discussion of Georgia's workers' compensation law relative to its workers' compensation subrogation rights. Let us start with the example of *Dep't of Admin. Servs. v. Brown*.  219 Ga.App. 27. In *Brown*, the plaintiff was injured in an automobile collision and as a result received over $100,000 in workers' compensation benefits.  Subsequently, the plaintiff sued the errant third party and the Department of Administrative Services (DAS) moved

to intervene, claiming that it had an interest in the plaintiff's recovery.  The trial court denied DAS's motion, which was ultimately reversed by the appellate court.  The plaintiff had proposed that since DAS's subrogation rights, under Georgia Code § 34-9-11.1(b), only entitled the insurer to recovery if she was fully and completely compensated, intervention should not occur until after there was a judgment.  *Id*.  The appellate court rejected that argument and found that DAS had a right to intervene, but did not extend that right as far as Skywest suggests.  *Brown* does not stand for the legal proposition that an intervenor has the right to prevent a settlement or judgment from jeopardizing the intervenor's interest.[2]  Rather, the narrow principle of law stated therein is that an employer/insurer has <u>a right to intervene</u> prior to a judgment.  Recognizing that the employer/insurer does not have an independent action against a third party and understanding the reality that if the case was settled and the settlement was dispersed without the employer/insurer's knowledge, the court noted that employer/insurer's lien may be jeopardized.  Counterpoise to these realizations, the court further understood that the employer/insurer could not recover on its lien until and unless the employee was fully and completely recovered.  Hence, Skywest

---

[2]  Without verification, Skywest's abbreviated quote from *Dep't of Admins. Servs. v. Brown*, 219 Ga.App. 27 (1993), would leave a reader with the impression that this precedent actually stood for an intervenor's ability to prevent a settlement or a judgment that it thought would jeopardize its interest: "Brown's proposal . . . jeopardizes DAS's interests in the event of settlement or trial." Dkt. No. 32 at p. 1.  Contextually, this is a misconstruction of this case's ruling.

quoted the appellate court out of context; the correct text should be read as stating that "plaintiff's proposal that DAS renew its motion **after judgment** jeopardizes DAS's interests in the event of settlement or during trial." *Id.* (emphasis added).  Therefore, *Brown* is neither as sweeping nor controlling as Skywest would like.

Although Skywest claims that *Hi-Ranger*'s facts are "indistinguishable" or consonant with our facts, they are not.  275 Ga. 197 (2002).  Briefly, after being injured on the job by a third party, both the employee and his employer jointly sued the tortfeasor.  The employee settled with the tortfeasor, executed a limited release, and filed a notice of dismissal with prejudice.  The trial court granted summary judgment to the defendant on the grounds that the employer's lien was extinguished by the settlement.  As this Court discerned, the crux of this case is the effect of an executed limited release.  After finding that the release agreement between Defendant Hi-Ranger and the individual plaintiff specified that the employer's claim would remain pending, the appellate court reversed the lower court's summary judgment and remanded the case.  Discussing the broader framework of the Georgia workers' compensation law, this Georgia court noted that an employer/insurer has two methods available to it to possibly recover benefits paid: Ga. Code § 34-9-11.1(c) provides the employer/insurer with a right to sue the tortfeasor if the employee does not commence

a lawsuit within a year of the incident,[3] while § 34-9-11.1(b) gives an employer/insurer the right to intervene to preserve and protect the lien.[4] Nonetheless, establishing that an injured employee has been fully and completely compensated before the employer/insurer can recover on its lien applies to both subsections, even though they "may operate differently depending upon the procedural posture of the case." *Id*. at 198. Focusing on the operation of § 34-9-11.1(c) because both the employee and the employer, as co-plaintiffs, were similarly situated, the court noted that if the employee chooses not to participate and assert his right to full and complete compensation, which is a protection afforded the injured employee, the employer,

---

[3] Ga. Code § 34-9-11.1(c) reads in part as follows:
If such action is not brought by the employee within one year after the date of injury, then the employer or such employer's insurer may but is not required to assert the employee's cause of action in tort, either in its own name or in the name of the employee. . . . <u>In any case, if the employer or insurer recovers more than the extent of its lien, then the amount in excess thereof shall be paid over to the employee</u>. (emphasis added).

[4] Ga. Code § 34-9-11.1(b) states in part the following:
In the event an employee has a right of action against such other person as contemplated in subsection (a) of this Code section and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery. The employer or insurer may intervene in any action to protect and enforce such lien. However, the employer's or insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and <u>shall only be recoverable if the injured employee has been</u> <u>fully and completely compensated</u>, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury. (emphasis added).

should it recover from the tortfeasor, is only required to pay to the employee an amount it recovers in excess of the lien amount. *Id.*; *see supra* n.3. With this being said, the appellate court construed the limited release executed by the employee, which allowed the employer's action to remain pending, as the employee waiving this right to insist that the employer prove that he has been fully and completely compensated. *Id.* Hence, primarily because of the limited release language, the employer's right to recover was not extinguished by the settlement. *Id.*

Skywest acknowledges, as it must, that there is a juxtaposition between the legal ramifications of § 34-9-11.1(b) and (c), which the Georgia appellate court laid bare in *Int'l Maint. Corp. v. Inland Paper Bd. & Packaging, Inc.*, 256 Ga.App. 752. In addition to discussing the procedural and substantive distinctions between these two subsections, *Inland Paper*, which was decided subsequent to *Hi-Ranger*, is more persuasive, if not controlling, in all respects to our set of facts. In fact, the situation in *Inland Paper* is more analogous to our facts than *Hi-Ranger*. Succinctly, the plaintiff/employee commenced an action against a tortfeasor. Soon thereafter, the the insurers moved to intervene, pursuant to 34-9-11.1(b), which was granted. However, after the insurers' intervention, the employee settled with the tortfeasor. Based upon the settlement, the trial court dismissed the insurers' intervention, found that the intervenors had acted wrongly in attempting to defeat the plaintiff's efforts to secure

a full and complete recovery, and advised the intervenors that they should commence a separate action in order to enforce their subrogation lien. *Id.* at 753.

The Georgia appellate court sympathized with the trial court's effort to defuse or reconcile an inherent conflict between the employee/plaintiff and the intervenors as they tried to hinder the employee from a complete and adequate recovery *via* the settlement. Without questioning the trial court's finding that the intervenors' conduct was "blatantly egregious" and "fundamentally wrong," the appellate court concluded that the trial court erred when it directed the intervenor to file a separate action. *Id.* at 754. The appellate court reasoned that the correct approach should have been that the court acknowledge that the lien remain pending for adjudication; then the only remaining issue to be addressed by the trial court would be to determine whether the total of the settlements fully and completely compensated the employee. *Id.*

The intervenors in *Inland Paper* argued that the result in *Hi-Ranger* was the controlling law. *Id.* The *Inland Paper* court noted significant differences between its case, which was governed by § 34-9-11.1(b), and *Hi-Ranger*'s facts, which were analyzed under § 34-9-11.1(c). *Id.* at 756. *Inland Paper* reiterates our general understanding of these two subsections. Under § 34-9-11.1(b), the employer/insurer is not given the employee's cause of action but only the ability to intervene to protect and preserve the lien, which creates a more narrow opportunity for recovery than that

found in § 34-9-11.1(c), which extends to "an employer/insurer a broader opportunity to recover its payments when an employee does not file on his own[.]" *Id*. Thus, "when a settlement is reached or a judgment is entered in a suit governed by OCGA § 34-9-11.1(b), the lien attaches to the recovery, that is, to the money now in the hands of the injured employee." *Id*. (quotation marks and citations omitted). In the final analysis, the statute "allows intervention, but it does not take away a plaintiff's power generally to direct his or her lawsuit against the alleged tortfeasor, [and an employee has] the right to settle with one or more defendants." *Id*. at 755.

Initially this Court was concerned that Skywest's intervention could conceivably derail Woodall's and the Defendants' settlement negotiations and set this litigation on a different course, until our review of *Inland Papers*. *See Woodall v. Rich Albany Hotel, LLC*, 2012 WL 12404018, at *10 (N.D.N.Y. Apr. 11, 2012). Subsequent Georgia court rulings have further disabused this Court of such a concern. Essentially, the timing of a settlement and the procedural posture of a § 34-9-11.1(b) intervention, such as this case, is not as critical as one may expect. For example, in the *City of Warner Robins v. Baker*, 255 Ga.App. 601 (2002), the plaintiff, a meter reader for the city, was injured in an automobile accident in the course of his employment and the city compensated him for his medical and income benefits. The employee/plaintiff sued the tortfeasor and immediately entered into negotiation to

settle the case.  When the city was apprised of the negotiations, it informed the plaintiff that it intended to file a subrogation lien against any settlement, but did not move to intervene.  The matter settled and the plaintiff moved to extinguish the lien, arguing that the employer waived the lien and thus was estopped to enforce it and positing that he had not been fully and completely compensated.  *Id*. at 601-02.

Pivotal to our discussion is the appellate court's finding that "[e]ven though an employer/insurer that has a subrogation lien has an absolute right to intervene in both trials and settlement negotiations, the existence of the lien itself is not dispositive," and can only be enforced if the employee is fully compensated, a burden of proof the employer/insurer carries.  *Id*. at 603-04.  The court further extrapolated on this issue by instructing on the virtues of settlement:

> As a matter of common sense, a decision to proceed to trial presents a significant risk, and a decision to settle for an amount less than what is perceived to be the full value of the claim is often made simply to minimize risk.  Such a decision certainly does not always indicate that the claimant has been "fully and completely compensated."

*Id*. at 604.

Lastly, this court conducted a rather comphrensive analysis of the settlement and found that the city failed to carry its burden in demonstrating that the employee had been fully and completely compensated.

Likewise, *Austell Healthcare, Inc. v. Scott*, 308 Ga.App. 393 (2011), has a similar sequence of events and result as *City of Warner Robins* and *Inland Papers*.

*-11-*

There, the injured employee sued the tortfeasors.  The insurers who paid benefits to the employee intervened.  Subsequently, the employees settled with the defendant for $76,000, and a evidentiary hearing was held to determine if the lien should be quashed, in which the intervenors chose not to participate.  Consequently, the trial court extinguished the intervenors' lien, finding that the intervenors could not prove that the employee had been fully compensated.  The appellate court acknowledged that the employer/insurer carries the burden of showing that the employee had been fully compensated, whether by receiving a jury award or settlement, and, when given the opportunity to meet their burden, the intervenors failed to proffer sufficient facts to support their burden.  *Id.* at 395-96; *accord Ga. Elec. Membership Corp. v. Garnto*, 266 Ga.App. 452 (2004) (finding that the employee who entered into a settlement with the tortfeasor was not fully and completely compensated).

In addition to revealing comparable procedural time lines to our case to digest, the above discussion of Georgia law clearly establishes that the insurer's right to intervene is subordinate to the insured's paramount right to complete compensation. *Canal Ins. Co. v. Liberty Mut. Ins. Co.,* 256 Ga.App. 866, 872 (2002).  Even though an intervenor is permitted to serve pleadings, and depending on the court's discretion, participate in discovery, the Georgia statute does not bestow on an intervenor, such as Skywest, the right to stop a settlement and compel a trial.  All that is available to

an intervenor is a right to prove that the injured employee has been fully and completely compensated by the jury award or the settlement before it can be reimbursed for the benefits that it may have paid to the injured employee. *Lara v. Tri-State Drilling, Inc*., 504 F. Supp.2d 1323 (N.D.Ga. 2007) (finding that an intervenor is "not necessarily entitled to recover on the lien until the plaintiffs have been fully and completely compensated"); *Watkins v. Vestil Mfg. Corp.,* 2008 WL 5102885, at *4 (N.D.Ga. Dec. 1, 2008) ("In the event of a settlement . . . an intervenor's right to subrogation is preserved, and the only claim that remains for adjudication is whether there was a full and complete recovery."); *Paschall Truck Lines Inc. v. Kirkland*, 287 Ga.App. 497 (2007).

Skywest has failed to persuade this Court that Georgia Law provides the authority to prevent, at any stage of the litigation, an employee from settling the case. Nor does the Court find that the proposed settlement is calculated to avoid Skywest's lien and amount to Woodall's tacit wavier of its right to require a showing of full compensation. Accordingly, the Court agrees with Woodall and the Defendants that if they settle this case and exchange full releases, the Defendants' liability ceases and the only parties remaining in this litigation would be Woodall and Skywest to determine if she is or has been "fully compensated."

Both Woodall and the Defendants indicate that they want to finalize settlement.

*-13-*

*See* Dkt. Nos. 34 at p. 1 & 35 at p. 3.  Unless these parties file a status report within seven (7) days of the filing date of this Order indicating that they have settled the case, the Court will convene a conference to set a new scheduling order.  In the event that the parties have settled, the Court will set up a conference to determine the nature of the hearing to determine whether the settlement constitutes full and complete compensation.  In the interim, if the parties have not already shared their disclosures with Skywest, they must do so immediately.

**IT IS SO ORDERED**.

May 11, 2012
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge